UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTHONY TILLMAN, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 4:21-cv-299 |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, | )   JURY TRIAL DEMANDED |
| ADRIAN BARNES, *in his official* | ) |
| *capacity,* and | ) |
| COMMISSIONER DALE GLASS, *in* | ) |
| *his official capacity*, | ) |
| | ) |
|    Defendants. | ) |
| | ) |
| | ) |

**COMPLAINT**

Plaintiff Anthony Tillman brings this Complaint against the City of St. Louis, Adrian Barnes, and Commissioner Dale Glass under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq*. He alleges as follows:

**INTRODUCTION**

1. Anthony Tillman is a thirty-nine-year-old man who has not been provided a shower for five months while detained pretrial at the City of St. Louis City Justice Center ("CJC"). Mr. Tillman uses a wheelchair due to paraplegia. Despite his known disability, the City of St. Louis has refused him use of a shower accessible to people with disabilities since the beginning of his detention at the CJC on October 5, 2020. The City's refusal to accommodate Mr. Tillman's disability violates Title II of the Americans with Disabilities Act of 1990.

1

**PARTIES**

2.     Plaintiff Anthony Tillman is a citizen of the United States and a resident of the State of Missouri. As of the filing of this Complaint, Mr. Tillman is detained at the CJC.

3.     Defendant City of St. Louis, Missouri, is a political and geographic subdivision of the State of Missouri and is organized as a constitutional charter city under Article VI, section 19 of the Missouri Constitution. The City is the public entity responsible for oversight of the City Justice Center through the Division of Corrections within the Department of Public Safety.

4.     Defendant Adrian Barnes is the Superintendent of the City Justice Center and is being sued in his official capacity. Defendant Barnes enforces the detention of individuals housed at the City Justice Center. At all times relevant to the subject matter of this litigation, Defendant Barnes was responsible for training and supervising all Correctional Officers at the City Justice Center, for setting jail policy, and for ensuring the health and welfare of all persons detained at the City Justice Center.

5.     Defendant Dale Glass is the Commissioner of the St. Louis Division of Corrections and is being sued in his official capacity. Defendant Glass directs the Division of Corrections and enforces the detention of individuals housed at City Justice Center. At all times relevant to the subject matter of this litigation, Defendant Glass was responsible for training and supervising all other Defendants and other employees of the City of St. Louis staffing the City Justice Center, for setting jail policy, and for ensuring the health and welfare of all persons detained at City Justice Center.

**JURISDICTION AND VENUE**

6.     This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 12188(a).

7. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1367. Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. §12205.

8. Venue is proper under 28 U.S.C. § 1391(b) because all of the events alleged herein occurred within the State of Missouri and all of the parties were residents of the State at the time of the events giving rise to this litigation.

9. Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## SUMMARY OF RELEVANT FACTS

10. Anthony Tillman uses a wheelchair as the result of a 2017 shooting that resulted in paraplegia. He still has a bullet lodged in his back from the 2017 shooting.

11. In February 2020, Mr. Tillman was incarcerated on an unrelated matter at the CJC.

12. During the CJC detention beginning in February 2020, Mr. Tillman was provided access to a shower that was not equipped for people in wheelchairs. Prison officials also did not assign staff to help him in shower. The shower had a ramp, but it only had one bar in the front of the shower and a fold-down seat that was not strong enough to hold him. To use the shower, Mr. Tillman had to roll his wheelchair to the shower, attempt to sit up from his wheelchair holding the one bar, maneuver with one hand on the bar and the other hand pushing down the fold-down seat, and effectively allow his body to fall down into the seat.

13. Mr. Tillman fell in the shower during his prior detention at the CJC, cutting his left buttock. After this fall, he developed a blood infection, also known as sepsis. He became delirious from the infection and was eventually hospitalized.

14. Due to the blood infection sustained, Mr. Tillman suffers from persistent, open wounds on his body and complications resulting in extremely dry skin and toenails that frequently fall off, all of which render him susceptible to infection.

15. Mr. Tillman has been incarcerated at St. Louis's City Justice Center since October 5, 2020. He has been confined to the second-floor infirmary--alongside approximately eight to ten people in COVID quarantine, and an additional three to four people in isolation cells--during the entirety of his stay because there are no rails or ramps throughout the rest of the jail.

16. Mr. Tillman has not received inmate orientation since arriving at CJC.

17. Mr. Tillman has not received a copy of the inmate handbook since arriving at CJC, and he has been unable to access this handbook on the tablets provided to inmates.

18. Prior to his detention at CJC, Mr. Tillman went to Paraquad every day for physical therapy. Mr. Tillman's doctors have told him that he is only temporarily paralyzed, and that physical therapy could help him build strength to walk again. But, he has not received any physical therapy since arriving at CJC, and his legs have atrophied.

19. When he arrived at CJC, Mr. Tillman spoke with a nurse whose name he cannot recall and informed her that, due to his disability, he would require either (1) a shower equipped for individuals who use wheelchairs or, alternatively, (2) staff assistance in showering.

20. In response, the nurse informed Mr. Tillman that there were no shower facilities equipped for people who use wheelchairs. Rather, CJC shower facilities require detainees to take a step in order to get into the shower and are equipped with neither bars nor rails. Further, CJC provides no staff assistance with showering to detainees who are disabled.

21. On or around October 12, 2020, after approximately a week of not bathing, prison officials provided Mr. Tillman with a basin and a rag with which to wash himself. He uses room

4

temperature water from the sink in his cell in order to clean the parts of his body he is able to reach.

22. Mr. Tillman was not provided an accessible shower in October, November, or December 2020.

23. On or around January 1, 2021, Mr. Tillman saw Dr. Brenda Mallard because he was urinating blood, for which she prescribed antibiotics. During that conversation, Mr. Tillman told Dr. Mallard that he had not had a shower since arriving at CJC. Dr. Mallard told Mr. Tillman that CJC was "working on" getting a Hoyer Lift, an assistive device that allows individuals to be transferred between a bed and a chair or other similar resting places by use of electrical or hydraulic power, but she provided no immediate solutions.

24. On or around January 2, 2021, Mr. Tillman asked Nurse Morris (first name unknown) if CJC could provide an individual to assist him with bathing. Nurse Morris denied his request, telling him: "This is not a long-term care facility! Talk to your attorney."

25. On February 12, 2021, Mr. Tillman spoke by phone with his public defender, Chelsea Harris, and social worker, Ms. Lee (first name unknown). He told them that he had been unable to shower since arriving at CJC on October 5, 2021 due to the lack of shower facilities equipped for individuals who must use a wheelchair and refusal of prison officials to provide staff to assist him.

26. Ms. Lee informed Mr. Tillman that she would speak with the nurses but that he would need to get an order from a judge in order to receive accommodations in the form of succificent facilities or staff assistance.

27. Mr. Tillman's persistent dry skin, toenails constantly falling off, and history of open sores and wounds leave his body with many opportune spots for infection.

5

28. Because Mr. Tillman is paraplegic and has been given only a wash basin and rag with which to bathe himself, he is unable to reach many spots of his body. Thus, he cannot ensure his exposed skin and nails remain clean, placing him at grave risk of infection.

29. As a result of these conditions, Mr. Tillman filed an Inmate Resolution Request ("IRR") in late December 2020 on a tablet, complaining of being unable to access a wheelchair-friendly shower or have staff assist with his bathing.

30. After not receiving a response to his grievance, Mr. Tillman asked his caseworker, Mr. Weber (first name unknown), about following-up or appealing, Mr. Weber replied, "They'll be getting back to you."

31. In mid-January 2021, Mr. Tillman filed a paper grievance because Nurse Morris was leaving his medication outside his chuckhole, where he could not access it, and because she was not changing his catheter. He filed this grievance on paper because the tablets were not working at the time.

32. Mr. Tillman was not provided an accessible shower in January or February 2021.

33. On March 3, 2021, after being incarcerated for nearly five months without an accessible shower, Mr. Tillman again asked his case manager, Ms. Lee, for a grievance form. Although he had not received a response to his December IRR about the shower, he hoped that filing another, emergency grievance might prompt jail staff to remedy the issue and provide him access to a shower.

34. Ms. Lee said she would get him a grievance form that same day, but she never returned with one.

35. On March 3, 2021, Mr. Tillman drafted his own grievance on a piece of paper and tried to give his grievance form to a CO to place in the grievance box, but the CO refused to put the form in the box.

36. On March 4, 2021, Mr. Tillman again asked a CO to accept his Emergency Grievance, but the CO refused to take it from him or place it in the grievance box.

37. On March 5, 2021, Mr. Tillman gave the same copy of his March 3 Emergency Grievance to CO Robinson.

38. On March 5, 2021, Mr. Tillman authorized his public defender to send a letter to Commissioner Glass given the lack of response to prior complaints and the initial refusal to accept the emergency grievance. Upon information and belief, Commissioner Glass never responded, despite the email requesting a response by close of business on March 8, 2021.

39. On March 8, 2021, Corrections Officer Price visited Mr. Tillman's cell and told him that they were trying to move him to a "wheelchair accessible shower." Mr. Tillman inquired about what made the shower wheelchair accessible, and CO Price explained that it was the same inaccessible shower in which he fell and hurt himself in early 2020, which led to a blood infection. Mr. Tillman informed CO Price that he needed a shower that could accommodate his wheelchair and allow him to transfer himself from my wheelchair. CO Price responded by telling him "We don't have that." Because the shower is not accessible, and Mr. Tillman is afraid of falling again and hurting himself, he asked if she or the CJC could accommodate him with an accessible shower. She said they could not, so Mr. Tillman told her that he did not want to use the inaccessible shower.

40. As of March 8, 2021, Mr. Tillman still has no access to shower facilities sufficient for a parapeligic inmate to fully wash and clean his own body. While most of his wounds have

7

healed at this time, he still has one wound on his left knee that has yet to heal. He receives no staff assistance in bathing his body or his wound.

41. As of March 8, 2021, all of Mr. Tillman's grievance forms have gone unanswered.

## CLAIM FOR RELIEF

**Count I – Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq.**
Failure to Provide Showers Accessible to People with Disabilities
(Against Defendant City, Superintendent Barnes, and
Commissioner Glass)

42. Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

43. Defendant City of St. Louis, Defendant Barnes, and Defendant Glass violated Title II of the ADA by failing to provide Mr. Tillman with a shower that is accessible to people with disabilities, assistance with bathing, or physical therapy.

44. Title II of the ADA states: "no qualified individual shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

45. State jails and prisons, including the City Justice Center, are within the statutory definition of a "public entity." *See Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)); *see also Kutrip* v. *City of St. Louis*, 329 F. App'x 683, 684-85 (8th Cir. 2009) (applying ADA to St. Louis City jail).

46. To state a claim under the ADA, a plaintiff must show "(1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999).

47. Mr. Tillman is a person with a disability under the ADA, as the statute "clearly covers typical disabilities such as . . . paraplegia." *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 499 (8th Cir. 2002).

48. Mr. Tillman is "otherwise qualified for the benefit in question," namely access to showers, which are a "service, program or activity" as defined by the ADA. *See United States v. Georgia*, 546 U.S. 151, 157, (2006).

49. Mr. Tillman has been excluded from the showers based upon his disability because the showers at CJC are not accessible. Upon information and belief, all but one of the showers at the CJC have steps to get into them, have no bars or rails, and lack an appropriate shower bench to which a person could safely transfer from a wheelchair. The one known shower with a ramp is too small to accommodate Mr. Tillman, lacks sufficient bars and rails, and lacks an appropriate shower bench to which a person could safely transfer from a wheelchair.

50. Furthermore, Mr. Tillman has been denied a reasonable accommodation to shower because Defendants refuse to provide him with a staff person to assist with his bathing.

51. Defendant City of St. Louis, Defendant Barnes, and Defendant Glass acted with deliberate indifference to Mr. Tillman's rights under the ADA because they had actual knowledge of his disability, knew that there was an available accommodation that would allow him to shower, and nonetheless denied him that accomodation for over five months.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Anthony Tillman prays that this Court enter an Order in his favor and respectfully asks that this Court:

1. Enjoin the Defendants continued discrimination and, specifically order the Defendants to:

    a. file with the Court, within 5 days of the entry of the Court's injunctive order, a detailed plan to establish a wheelchair-accessible shower at the City Justice Center ("CJC");

    b. build out a wheelchair-accessible shower within 21 days of the filing of the detailed plan; and

    c. in the interim, assign medical staff to assist Mr. Tillman in the shower.

2. Award monetary damages as compensation for the harm suffered by Mr. Tillman including but not limited to:

    a. All economic losses on all claims as allowed by law.

    b. Compensatory and consequential damages, including damages for emotional distress, embarrassment, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

    c. Attorneys' fees and costs associated with this action, including expert witness fees, on all claims allowed by law; and

3. All appropriate relief at law and equity that this Court deems just and proper.

Dated: March 9, 2021                    Respectfully submitted,

                                        ARCHCITY DEFENDERS, INC.

                                        */s/Emanuel Powell*
                                        Blake A. Strode (MBE #68422MO)
                                        Jacki Langum (MBE #58881MO)
                                        John M. Waldron (MBE #70401MO)
                                        Maureen Hanlon (MBE #70990MO)
                                        Emanuel Powell (E.D. Mo. Bar No. #706171MA)
                                        Nathaniel R. Carroll (MBE #67988MO)
                                        440 N. 4th Street, Suite 390

Saint Louis, MO 63102
855-724-2489
314-925-1307 (fax)
bstrode@archcitydefenders.org
jlangum@archcitydefenders.org
jwaldron@archcitydefenders.org
mhanlon@archcitydefenders.org
epowell@archcitydefenders.org
ncarroll@archcitydefenders.org

RODERICK & SOLANGE MACARTHUR JUSTICE CENTER

*/s/Amy E. Breihan*
Amy E. Breihan (MBE #65499MO)
William Patrick Mobley (MBE #63636MO)
3115 S. Grand Blvd., Suite 300
Saint Louis, MO 63118
(314) 254-8540
(314) 254-8547 (fax)
amy.breihan@macarthurjustice.org
pat.mobley@macarthurjustice.org

SAINT LOUIS UNIVERSITY SCHOOL OF LAW LEGAL CLINICS

*/s/Brendan Roediger*
Brendan Roediger (E.D. Mo. Bar No. #6287213IL)
Lauren Bartlett (MBE #71698MO)
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
314-977-2778
brendan.roediger@slu.edu
lauren.bartlett@slu.edu

*Attorneys for the Plaintiff*


RIGHTS BEHIND BARS

*/s/Oren Nimni*
Oren Nimni *pro hac vice forthcoming*
416 Florida Avenue, NW #26152
Washington, D.C. 20001
(206) 200-9088
oren@rightsbehindbars.org

11

*Attorneys for the Plaintiff*