# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| Anthony Tillman,<br><br>PLAINTIFF,<br><br>v.<br><br>City of St. Louis, Adrian Barnes in his official capacity, & Dale Glass in his official capacity,<br><br>DEFENDANTS. | Civil Action No. 4:21-cv-00299 RLW |

## Memorandum in Support of Defendants' Motion to Dismiss and in Opposition to Granting Plaintiff's Motion for Temporary Relief

Come now Defendants City of St. Louis, Adrian Barnes and Dale Glass, through counsel, and move that Plaintiff's Complaint be dismissed for failure to state a claim upon which relief may be granted as plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act. Defendants additionally argue that plaintiff's request for temporary restraining order and preliminary injunction should be denied because plaintiff is not likely to succeed on the merits of his claim, the public interest in efficient administration of the City Justice Center and equitable allocation of medical care would not be served by granting plaintiff's request relief, plaintiff has not and will not suffer irreparable harm, and the balance of equities weighs in favor of denying plaintiff's request for relief.

**1. Background**

Plaintiff Anthony Tillman is currently incarcerated at the St. Louis City Justice Center in downtown St. Louis. He alleges that he is being denied access to a shower equipped for someone with his physical pedigree and medical history, and presents a seemingly

straightforward request for relief: that he be provided a shower. Defendants have not prevented plaintiff from bathing or showering during his incarceration at the Justice Center, and similarly have no desire to prevent him (or any other paraplegic inmate) from bathing and showering in the future. While the practical reality of the parties' dispute may suggest easy resolution; the legal reality requires this Court to dismiss plaintiff's complaint for failure to state a claim because he has patently failed to exhaust his administrative remedies and this lawsuit is barred under the Prison Litigation Reform Act (PLRA).

Plaintiff alleges that he is paraplegic, that he has informally requested medical staff provide assistance showering multiple times, that he has been denied assistance and availability of an accessible shower. ECF 4, p. 2-3. He alleges that he has attempted to file a grievance in December 2020 related to shower access and assistance, but did not receive a response. ECF 4, p. 4, para. 30. He alleges that he filed another grievance in mid-January 2021, unrelated to showering, and instead relating to a nurse leaving his medication at his chuckhole where he could not easily get to it, and refusing to change his catheter. ECF 4, p. 4, para. 33. Plaintiff does not provide any allegations as to what, if any, response he received to this grievance. He then alleges that he asked a social worker to provide him with a new grievance form on March 3, 2021, but did not receive help. ECF 4, pp. 4-5, paras. 34-35. And finally, plaintiff alleges that he wrote an emergency grievance on March 3, 2021, was prevented from putting it in the grievance box, and instead instructed a corrections officer to place it in the box for him. ECF 1, p. 7, para 37. He alleges that on March 5, 2021, he "authorized [his] public defender to send a letter to Commissioner Glass given the lack of response to prior complaints and the initial refusal to accept the emergency grievance." ECF 4, p. 5, para. 39. Plaintiff makes no allegations that he received a response to his emergency grievance submission, but does allege that on March 8, 2021, he was offered the opportunity to move to a wheelchair accessible shower, but

2

that he did not believe this shower would meet his needs and therefore he refused this opportunity. ECF 4, pp. 5-6, para. 40.

**2. Plaintiff's Complaint Must be Dismissed for Failure to Exhaust Administrative Remedies**

Exhaustion Requirement under PLRA: The Prison Litigation Reform Act (PLRA), codified at 42 U.S.C. § 1997 e(a) provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, *or any other Federal law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [Emphasis added.] The U.S. Supreme Court held in *Porter v. Nussle*, 534 U.S. 516 (2002), that the "PLRA's exhaustion requirement applies to all inmate suites about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id at 532. Because Plaintiff's own pleaded facts show he bypassed the grievance process and is attempting to conflate multiple grievances in this action, he pleads no sufficient facts constituting an excuse for this failure to exhaust administrative remedies. Accordingly, the Court should dismiss his claims for failing to comply with the mandates of § 1997e(a) and *Nussle*.

Plaintiff has unambiguously pled that he did not exhaust his administrative remedies. For this reason, his complaint should be dismissed for failure to state a claim. An exploration of the Prison Litigation Reform Act and related case law supports this conclusion. The United States Supreme Court and lower federal courts have interpreted the PLRA to require exhaustion of administrative remedies before a claim under § 1983 relating to conditions of confinement can proceed. The 1995 Act "invigorated" the exhaustion requirement, since prior to the enactment of the PLRA, exhaustion was discretionary and could be required only if a

3

prison grievance system met certain federal standards and the reviewing court believed requiring exhaustion was appropriate and in the interests of justice. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). After enactment of the PLRA, the exhaustion requirement became mandatory rather than discretionary for all suits challenging prison conditions, regardless of whether the available remedies met any federal standards and regardless of the type of relief requested. See id. at 84-85.

The Supreme Court explored and clarified any confusion about the exhaustion component of the PLRA in *Porter v. Nussle*, 534 U.S. 516 (2002), holding that exhaustion of administrative remedies is required before a suit brought by a prisoner pursuant to §1983 may proceed. Specifically, the Court interpreted the following language: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997 e(a). After considering the statutory provision, the Court held "in line with the text and purpose of the PLRA, our precedent in point, and the weight of lower court authority, that Section 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences," and that the PLRA was an "elimination of judicial discretion to dispense with exhaustion" and a "deletion of the former constraint that administrative remedies must be 'plain, speedy, and effective' before exhaustion could be required." *Porter* at 531. Additionally, the Court confirmed that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. at 532. The Court also acknowledged and reaffirmed its prior holding that exhaustion is required "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages." *Id* (citing *Booth v. Churner*, 532 U.S. 731 (2001)).

4

Under Eighth Circuit precedent, the PLRA's exhaustion requirement is an affirmative defense that, normally, the defendant has the burden to plead and to prove. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005). But, "[a]lthough it may be unusual to uphold an affirmative defense at the pleading stage," courts appropriately dismiss when an affirmative defense is clearly established on the face of the complaint. *Burlison v. U.S.*, 627 F.2d 119, 122 (8th Cir. 1980); *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995); *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012).

<u>Prison Grievance Policy and Procedures:</u> City of St. Louis Department of Public Safety/Division of Corrections Policy enumerates the process for filing a grievance and exhausting administrative remedies. See Ex. A, Inmate Grievance Policy. This policy is made accessible to inmates in the institutional libraries. See Ex. A, p. 5, para. 3. It identifies the four progressive stages of grievance exhaustion available to inmates including: (1) informal resolution request; (2) formal grievance; (3) emergency grievance; and (4) appeals. The precise details of these stages of exhaustion are explained in the policy, including timing requirements. Notably, Corrections policy provides that when an inmate properly submits a formal grievance and the grievance has been logged by staff, "the grievance coordinator will have (15) working days from the receipt of the Grievance Form from CSU to issue a resolution response to the inmate." Ex. A, p. 9, para 7. Inmates also have the option of submitting an emergency grievance which when "conditions exist in which going through the normal grievance process would subject the inmate to substantial risk of personal injuries or other things." Ex. A, p. 10, para. D.1. An inmate must submit a written complaint marked emergency grievance and place it in the designated mailbox. See *id*, para. D.2. If the emergency grievance has been properly submitted and determined to be an actual emergency grievance, corrections will initiate resolution of the emergency grievance "by close of business day unless there is clear reason not

5

to do so." Ex. A, p. 10, para. 4. Inmates have the opportunity to appeal the response to an emergency grievance to the Commissioner of Corrections to be responded to within three (3) working days.

The appeal process for formal written grievances and emergency grievances is outlined in Corrections policy. Ex. A, pp. 11-12. Once an appeal has been properly initiated, the Commissioner of Corrections is required to issue a response within ten (10) business days unless further investigation is warranted. Only when the appeal response has been issued by the Commissioner and discussed with the inmate, has the grievance process been exhausted. Ex. A, p. 12, para. A.5.

Plaintiff's Allegations Demonstrate Failure to Exhaust: Plaintiff alleges that he initiated in some form three (3) separate grievance proceedings relating to shower-access, but that none were properly exhausted. Plaintiff has pled that he initiated one grievance related to shower-access in December of 2020 by filing an Inmate Resolution Request (IRR), which is the first level of the grievance process. Plaintiff also alleges that he wanted to submit a formal shower-related grievance on or about March 3, 2021, and requested but did not receive help from a social worker. And plaintiff alleges that on or about March 5, 2021, he submitted an emergency grievance relating to shower-access by giving it to a corrections officer. Lastly plaintiff alleges that he submitted this emergency grievance (by email through his attorney) directly to the Commissioner of Corrections. Plaintiff's allegations on their face show that he failed to follow proper procedure when initiating grievances and failed to exhaust the grievance remedies available to him. His anticipatory pleading attempts to circumvent the exhaustion rule are not sufficient to the purpose.

6

With respect to the December 2020 informal resolution request grievance, plaintiff alleges that he inquired about following-up or appealing a decision to his caseworker, but that she did not assist him, giving rise to the obvious inference that he did not appeal or otherwise exhaust this grievance by appropriately filing a formal paper grievance as required by policy. With respect to the March 5, 2021, emergency paper grievance, plaintiff pleads that he gave a copy of this grievance to a corrections officer, rather than placing it in the appropriate box as required by policy. Additionally, plaintiff filed his lawsuit on March 9, 2021, four days after he alleges that he attempted to submit the formal grievance. Inmate grievance procedure policy clearly provides that Corrections will have 15 days to respond to a properly submitted grievance form, objectively demonstrating failure to exhaust.

With respect to the March 5, 2021, "emergency grievance" submitted by plaintiff's criminal defense attorney, plaintiff alleges that this grievance was sent directly to the Corrections Commissioner, rather than properly submitted as required by policy. Plaintiff also concedes that on March 8, 2021, Corrections staff offered to move him to a wheelchair accessible shower, and that plaintiff declined this offer because he did not believe the shower would be adequate for his needs.  Plaintiff pleads no facts showing special expertise in accessible shower design or operation. Plaintiff's allegations again necessarily give rise to the obvious inference that he did not exhaust administrative remedies as required by the grievance policy and procedures, and instead filed this lawsuit on March 9, 2021.

**3. The Court Must Hear Evidence on Plaintiff's Failure to Exhaust Before Granting Temporary Relief**

Because the allegations of Plaintiff's Complaint and Declaration demonstrate his obvious failure to follow Corrections grievance policy and exhaust administrative remedies as

7

required by the PLRA, the Court may not enter temporary injunctive relief until Defendants have the opportunity to present evidence of Plaintiff's failure to exhaust. In *Benjamin v. Ward Cnty.*, 632 Fed. Appx. 301 (8th Cir. 2012), the Court of Appeals held that the district court erred by proceeding on the merits of plaintiff's claim regarding his pretrial detention in the county jail, "without first determining whether he had exhausted administrative remedies." *See also Lyon v. Vande Krol*, 305 F.3d 805, 807 809 (8th Cir. 2002 )(en banc). Plaintiff Tillman's complaints about inadequate shower access may not be reviewed on the merits, even in the context of a hearing for temporary restraining order, until the district court has heard evidence on exhaustion. In a case such as this, where at most plaintiff can contend that there exists a factual dispute as to whether plaintiff properly availed himself of the grievance process, or whether he was prevented from exhausting administrative remedies, the district court must hear evidence in order to make the factual determination on failure to exhaust. Notably, the Court must determine that plaintiff's exhaustion of remedies preceded the filing of this lawsuit.

### 4. Plaintiff has Failed to Satisfy the Requirements for Temporary Relief

Plaintiff has moved for a temporary restraining order and preliminary injunction requiring defendants to "(1) file with the Court, within 5 days of the Court's order, a detailed plan to establish a wheelchair-accessible shower at the City Justice Center; (2) build out a wheelchair-accessible shower within 21 days of the filing of the detailed plan; and (3) in the interim assign nursing staff to assist Mr. Tillman in the shower." ECF 2, p. 1. In order to be entitled to the relief requested, plaintiff must show a probability of success on the merits of his complaint; that he will suffer irreparable harm without the relief requires; that the public interest weighs in favor of granting his motion; and that the balance of equities tips in his favor. *See Libertarian Party v. Lamont*, 977 F.3d 173 (2d Cir. 2020); see also *Dixon v. City of St Louis*, xx

8

F.3d xx (8th Cir. 2020). When seeking a mandatory injunction against the government, plaintiff must carry a higher burden and show a clear or substantial likelihood of success on the merits. *Id* at 177. Additionally, and importantly, "[i]n the prison setting, a request for a preliminary injunction must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)(internal quotations omitted).

Success on the merits: Plaintiff is unable to show a clear or substantial likelihood on the merits of his claim that he is being denied wheelchair-accessible shower access in violation of the Americans with Disabilities Act. As detailed above in the portion of this memo arguing that plaintiff's claim must be dismissed, plaintiff has failed to exhaust administrative remedies and therefore his claims for relief relating to the conditions of his pretrial detention may not proceed. Additionally, plaintiff's claims that he is being denied shower access and that the Justice Center lacks adequate ADA compliant shower facilities can be easily refuted by defendants. For purposes of evaluating the likelihood of plaintiff's success on the merits of his claims, defendants bring several points to the Court's attention: defendants are prepared to prove that plaintiff never requested the shower accommodations he now claims to need, and that, when offered the opportunity to use the shower available to other paraplegic inmates, plaintiff declined; the Justice Center has an accessible shower and other appropriate equipment for paraplegic inmates to use in order to shower, see Ex. B. ADA approval, Ex. C. photos of shower and equipment; finally, in fact, plaintiff's disability does not require him to use the equipment he demands, as he is capable of independent movement and care.

Additionally, while Defendants appreciate the seriousness of Plaintiff's medical condition and history which are relevant to his claims, they must remark on the similar

9

seriousness of Plaintiff's pending criminal case (and prior criminal convictions) as well as the history of release, bond revocation, and subsequent repetitive requests for and denials of bond modification or release by state court judges which arguably demonstrate a certain pattern of manipulation and deception. Plaintiff is currently detained on the following pending charges after being indicted by the Grand Jury of the Twenty-Second Judicial Circuit of the State of Missouri: Domestic Assault in the First Degree (Felony B); Armed Criminal Action (Unclassified Felony); Unlawful Possession of a Firearm as a Convicted Felon (Felony D); Endangering the Welfare of a Child (Felony D); Property Damage First Degree (Felony E). Plaintiff declares that he was initially detained in February of 2020. ECF 4, p. 1, para. 4, but developed a serious medical condition requiring him to go to the hospital soon thereafter. How did he come to be released and re-incarcerated? (ECF 4, p. 2). Plaintiff's court record in Cause No. 2022-CR00677 shows he was released from the Justice Center on or about April 8, 2020, due to developing a medical condition requiring intensive treatment.[1] Plaintiff's declaration states that he was "incarcerated again" with no mention of how he came to be reincarcerated. Plaintiff's court file shows that on or about September 29, 2020, prosecutors moved to revoke plaintiff's bond due to concerns for the safety of the alleged victim in his pending criminal case. See Court file in Cause No. 2022-Cr006777-01. Plaintiff's bond was revoked on or about October 1, 2020. Id. Since being "incarcerated again", plaintiff has moved, through his attorneys, to be reinstated on bond three separate times to no avail. *Id.* The court record shows that the subject of wheelchair accessible shower was never raised in the written motions for bond reduction or reinstatement. *See id.*

---

[1] Federal district courts appropriately take judicial notice of state court files when they are relevant to issues in federal court. *See Knutson v. City of Fargo*, 600 F.3d 992, 1000 (8th Cir. 2010).

Irreparable harm: Plaintiff will not suffer irreparable harm if the request for temporary relief is denied. If plaintiff's allegations are taken as true, he has been denied a shower for several months, but has been provided alternate means of bathing. The necessity of taking a sponge-bath with lukewarm water can hardly be considered irreparable harm, especially in light of the fact that Mr. Tillman admits he was offered an opportunity to use the shower provided to other paraplegic inmates, but refused this offer. Defendant are prepared to prove that he refused this offer because he preferred to remain in the area of the jail where he was not required to share a room with another inmate. Defendants' refusal of the offer to use the wheelchair accessible shower also demonstrates that he will not suffer irreparable harm if his request for relief is denied. Additionally, notwithstanding Plaintiff's previous refusal, Defendants are prepared to move Plaintiff immediately to a wheelchair accessible shower that is ADA compliant.

Public interest and balance of equities: Granting plaintiff's request for temporary relief is not in the public interest, and the balance of equities do not fall in favor of granting the request. The public has an acute and sensitive interest in the City's ability to effectively run, control and provide care for the inmates at the City Justice Center. The fact that plaintiff is unlikely to succeed on the merits of his claim combined with "the public policy of deferring to prison officials in matters of prison administration," demonstrates that the public interest would not be served by the granting of plaintiff's requested relief. Additionally, "[t]he public's interest in the orderly administration of prisons and the conservation of prison resources is furthered if the court declines to interfere in the day-to-day running of the prison. While the public has a general interest in the enforcement of constitutional rights, it is overcome by the countervailing interest in efficient management of the prisons." *Hughbanks v. Dooley*, 2010 U.S. Dist. LEXIS 116081, at *18-19 (D.S.D. Oct. 28, 2010); see also *Preiser v. Rodriguez*, 411 U.S.

11

475, 491-92 (1973)("It is difficult to imagine an activity in which a State has a stronger interest . . . than the administration of its prisons").

As stated above, defendants have no desire to prevent plaintiff from showering or bathing in any matter. They actually have a measurable interest in facilitating bathing to preserve the hygiene of the inmates and staff working in the facility, especially during a time of prevalent infection. However, the relief plaintiff requests is excessive; and would cause significant disruption and expense for defendants. Additionally, allowing an inmate to pursue this relief without exhausting administrative remedies, and in spite of evidentiary material casting serious doubts on the accuracy of his version of events, would negatively affect defendants' ability to maintain a controlled environment in the jail, while ensuring medical resources are proportionately allocated to the inmates who need them.

Certainly, the public interest is served by the protection of inmates' constitutional and statutory rights.  Nevertheless, the public has a such strong interest in the defendants' safe, efficient and effective administration of the Justice Center, and a strong interest in disallowing and discouraging abuse of the jail grievance process, that it cannot be said that granting plaintiff's relief is in the public interest. Similarly, because of the prevailing public interest in the effective administration of the City Justice Center by defendants, the unnecessary burden and complications granting plaintiff's request would create, the fact that the Justice Center has shown that it is equipped and willing to offer plaintiff a shower facility, and the fact that plaintiff has been determined to be a danger to the community in numerous bond review hearings initiated in an attempt to secure his release from confinement combined with the Justice Center medical staff reports that plaintiff is very willing to perform his own self-care, the balance of equities weighs in favor of denying plaintiff's request for relief.

12

5. Conclusion

Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies as required by the PLRA. The Court must hear evidence in order to make a factual determination on the issue of exhaustion before deciding plaintiff's request for temporary relief. Plaintiff's failure to exhaust demonstrates that he is not likely to succeed on the merits of his claim. This demonstration combined with the other factors to be considered in response to a request for temporary injunctive relief (including the public interest, balance of equities and irreparable harm) require that plaintiff's motion for temporary restraining order and preliminary injunction be denied.

Respectfully submitted,
Michael Garvin,
CITY COUNSELOR

/s/ J. Brent Dulle #59705(MO)
Associate City Counselor
Ashley J. Moore #69462
Catherine Dierker #70025
Assistant City Counselors
City of St. Louis Law Department
1200 Market Street
City Hall Room 314
St. Louis, Missouri 63103
Phone: 314-622-4644
DulleB@stlouis-mo.gov