# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY TILLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:21cv299 RLW |
| vs. | ) |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for failure to exhaust administrative remedies, filed on March 14, 2021. (ECF No. 18). On March 15, 2021, Plaintiff filed an opposition to Defendant's Motion to Dismiss. (ECF No. 22). On March 16, 2021, Defendants filed a reply in support of their Motion to Dismiss. (ECF No. 25). Defendants' Motion to Dismiss is fully briefed and ready for disposition.

### Factual Allegations

Plaintiff Anthony Tillman ("Tillman") alleges he has been denied the ability to shower since he has been detained at the City Justice Center ("CJC"), beginning October 5, 2020. (Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order ("Memo"), ECF No. 2-1, at 1). Tillman contends the shower facilities are "inaccessible to people with physical disabilities like Mr. Tillman, and the Defendants have refused to make reasonable accommodations that would allow him to shower." (Memo at 1).

Tillman has been a paraplegic since a 2017 shooting. (Memo at 2; Tillman Dec., ¶3). Previously, in February 2020, Tillman was incarcerated at the CJC. (Memo at 2). During that stay, Tillman fell while trying to take a shower "in an inaccessible bathroom after jail staff

denied his request for assistance." (Memo at 2). Tillman suffered a laceration and then a blood infection. (Memo at 2, Tillman Dec, ¶6-7). Tillman "remains frightened that he may suffer another blood infection absent adequate hygiene protocols." (Memo at 2, Tillman Dec., ¶29).

Upon his October 2020 arrival at the CJC, Tillman alleges he told a nurse he required "either (1) a shower equipped for individuals who use wheelchairs or, alternatively, (2) staff assistance in showering." (Memo at 2, Tillman Dec., ¶17). Tillman alleges he never received a shower or assistance with bathing, remained in his street clothes for 10 days after his initial request, and had his open wounds cleaned only one time per day (instead of twice). (Memo at 2, Tillman Dec., ¶¶18, 19, 41). On October 15, 2020, prison officials provided Tillman with a wash basin and a rag, but Tillman could not access lower parts of his body due to his paraplegia. (Memo at 3, Tillman Dec., ¶20-21).

Tillman alleges that he complained to medical and prison staff regarding his situation, but his complaints were either thwarted or ignored. Tillman contends that he submitted an electronic Informal Resolution Request (IRR) in December 2020 regarding his lack of access to a "wheelchair friendly shower" and no "help from staff to shower", but never received a response. (Tillman Dec., ¶¶30-32, 42; Emergency Grievance, ECF No. 4-1 at 1). Tillman states he submitted a paper IRR in January 2021 regarding Nurse Morris leaving medication in his chuckhole where he could not reach it. (Tillman Dec., ¶33). Tillman claims he did not receive a response to his January 2021 IRR. (Temporary Grievance at 1).

On March 3, 2021, Tillman alleges he asked his case manager, Ms. Lee for another grievance form, but she never provided one. (Tillman Dec., ¶¶34-35). On March 3, 2021,

Tillman filed an "Emergency Grievance" (ECF No. 4-1), complaining that he had not been provided with a shower for the 151 days of his incarceration.[1]

Tillman alleges that on March 5, 2021, he "authorized [his] public defender to send a letter to Commissioner Glass given his lack of response to prior complaints and the initial refusal to accept [his] emergency grievance." (Tillman Dec., ¶39).

On March 8, 2021, correctional officer Price informed Tillman he would be moved to a "wheelchair accessible shower." (Memo at 5, Tillman Dec., ¶40). The "wheelchair accessible shower" was the same shower where he fell in early 2020. (Memo at 5, Tillman Dec. ¶40). Tillman said he would not use this "inaccessible shower." (Memo at 5, Tillman Dec., ¶40).

Tillman claims he "repeatedly requested an accommodation that would allow him to use the shower," but "[n]o reasonable accommodation was provided." (Memo at 9). Tillman maintains he was "offered a shower on March 8, 2021, that was not accessible for someone with his disability, one from which he previously fell and injured himself." (Memo at 9, Tillman Dec., ¶40). Tillman claims that Defendants' failure to accommodate Tillman "has already led to severe medical complications" and without injunctive relief, "those consequences will only worsen." (Memo at 10).

---

[1] Tillman states that CO Robinson would not take his handwritten grievance form to the grievance box on March 3, 2021 because Ms. Lee was not there. (Tillman Dec., ¶36). Tillman states that on March 4, 2021, he wrote a note to Ms. Lee asking for a grievance form, but he never received the grievance form. (Tillman Dec., ¶37). On March 5, 2021, Tillman gave the March 3, 2021 handwritten Emergency Grievance to CO Robinson, but Tillman is unsure if CO Robinson gave the Emergency grievance to Ms. Lee. (Tillman Dec., ¶38).

3

## I. Exhaustion of Remedies

### A. Legal Standard

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "This language is mandatory." *Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1092–93 (D. Colo. 2020) (citing *Ross v. Blake*, –– U.S. ––, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) ("There is no question that exhaustion is mandatory under the PLRA.")). "[T]he PLRA's text suggests no limits on an inmate's obligation to exhaust," except that administrative remedies must be "available." *Ross*, 136 S. Ct. at 1856. Thus, "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Id.* at 1856-57. "Availability, however, does not turn on the types of remedies available through the administrative procedures, but on the administrative procedures themselves." *Nellson*, 454 F. Supp. 3d at 1092 (citing *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 1825, 149 L.Ed.2d 958 (2001)). There must be "the possibility of some relief," not all relief an inmate hopes to receive through the grievance process. *Ross*, 136 S. Ct. at 1859 (quotations omitted).

The PLRA's exhaustion requirement, however, is not a heightened pleading requirement. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (citing *Wyatt v. Terhune,* 315 F.3d 1108, 1117–18 (9th Cir. 2003)). "This circuit considers the PLRA's exhaustion requirement to be an affirmative defense that the defendant has the burden to plead and to prove." *Nerness*, 401 F.3d at 876 (citing *Foulk v. Charrier,* 262 F.3d 687, 697 (8th Cir.2001), *Chelette v. Harris,* 229 F.3d

4

684, 686–88 (8th Cir.2000)). Likewise, a lack of exhaustion does not deprive federal courts of subject matter jurisdiction. *Id.*

"A plaintiff is required to exhaust administrative remedies before seeking a TRO or a preliminary injunction, just as he is required to do before seeking other remedies covered by the PLRA." *Nellson*, 454 F. Supp. 3d at 1092 (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("When a prison inmate seeks injunctive relief, a court not need ignore the inmate's failure to take advantage of adequate prison procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them."); *Little*, 607 F.3d at 1249 (addressing exhaustion before reaching the merits of a plaintiff's request for a preliminary injunction due to prison conditions)).

The Supreme Court has described the PLRA as a "mandatory exhaustion" statute and has "reject[ed] every attempt to deviate ... from its textual mandate." *Ross*, 136 S. Ct. at 1857. "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little*, 607 F.3d at 1249. The only "textual exception to mandatory exhaustion" in the PLRA is the "availability" of administrative remedies. *Ross*, 136 S. Ct. at 1858. Under the Supreme Court's decision in *Ross v. Blake*, a prison grievance process is unavailable—and thus may be deemed exhausted—in three circumstances: (1) when the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (citing *Ross*, 136 S. Ct. at 1859–60 (2016)).

### B. Discussion

Defendants argue that Plaintiff's allegations demonstrate that Tillman failed to exhaust his administrative remedies. With respect to the December 2020 IRR, Defendants note that Tillman did not inquire about following-up or appealing a decision to his caseworker. (ECF No. 20 at 7). Rather, Tillman only states that his caseworker did not assist him. Defendants conclude that Tillman must not have appealed or otherwise exhausted his grievance by appropriately filing a formal paper grievance as required by policy. (ECF No. 20 at 7).

Similarly, with respect to Tillman's March 5, 2021 "emergency grievance," Defendants argue that Tillman alleges only that his grievance was sent directly to the Corrections Commissioner, rather than properly submitted as required by policy. Defendants note that CJC staff offered to move Tillman to a wheelchair accessible shower, but Tillman declined because he did not believe the shower would fit his needs. (ECF No. 20 at 7). Defendants claim that Plaintiff's allegations "again necessarily give rise to the obvious inference that he did not exhaust administrative remedies as required by the grievance policy and procedures, and instead filed this lawsuit on March 9, 2021." (ECF No. 20 at 7).

In response, Tillman argues that the grievance procedure was unavailable to him. First, Tillman maintains that the CJC staff were unwilling to help him with his grievance and appeal. In one instance, Tillman notes that he filed an IRR in December 2020 regarding obtaining a wheelchair shower or assistance with bathing, but did not receive a response. When he asked about a response, he was told by Mr. Weber that "They'll be getting back to you." Tillman states that he was required to get a response to his IRR before he had the option of filing a formal

6

grievance. Therefore, the CJC's failure to respond to his IRR created a procedural dead end, making it impossible for him to proceed to the formal grievance process.

Likewise, Tillman states that the emergency grievance procedure was likewise a dead end. He attempted to submit his emergency grievance on March 3, 2021, but it was probably submitted on March 5, 2021. The Commissioner had three working days to respond, and the latest the Commissioner should have responded would have been on March 9, 2021. Tillman maintains he has not received a response. (ECF No. 22 at 8).

Tillman further claims that the CJC grievance process is opaque since he did not receive orientation as required under policy. Tillman claims he asked for help but did not receive it. (ECF No. 22 at 9).

Finally, Tillman maintains that CJC staff prevented him from taking advantage of the CJC grievance process. As stated, Tillman was unable to proceed to the formal grievance process because he did not receive responses to his IRRs. In addition, prison officials refused to file his complaints on several occasions. (ECF No. 22 at 10).

The Court finds that Defendants have failed to meet the standard for the affirmative defense that Tillman failed to exhaust his administrative remedies. Defendants argue that Tillman should be faulted for not pursuing his grievance beyond filing his IRR on a tablet (ECF No. 25 at 3), but Defendants fail to address the obstacles to filing and pursuing his grievances identified by Tillman. Defendants cannot rebut Tillman's claim that he repeatedly asked for the forms for pursing his complaint, but was not provided these forms. Likewise, Defendants do not address Tillman's assertion that Defendants refused to timely file his complaints. Finally, Defendants summarily cite to Tillman's prior incarcerations as evidence that he should have been aware of

CJC complaint procedures, but Defendants provide no evidence to support this contention. (ECF No. 25 at 5). As a result, Court finds that Defendants have not met their burden to establish that Tillman failed to exhaust his administrative remedies. *Nerness*, 401 F.3d at 876. The Court denies Defendants' Motion to Dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 18) is **DENIED**.

**IT IS FURTHER ORDERED** that the hearing on Plaintiffs' Motion for Temporary Restraining Order is set for **Wednesday, March 17, 2021 at 11:00 a.m.** The hearing will be held via telephone. The telephone number for the hearing is (888)278-0296. The access code is 5718240.

**IT IS FINALLY ORDERED** that, if the public or media wish to listen to the telephone conference, they may participate, but they shall keep their telephones on mute for the duration of the hearing. Anyone who does not adhere to this provision will be disconnected.

Dated this 16th day of March, 2021.

_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**