# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY TILLMAN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:21cv299 RLW |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (ECF No. 2).[1] This case was filed on March 9, 2021. The Court held a telephonic hearing on March 17, 2021, on Plaintiff's Motion for Temporary Restraining Order. Plaintiff's Motion for Temporary Restraining Order is fully briefed and ready for disposition.

## Factual Allegations

Plaintiff Anthony Tillman ("Tillman") alleges has been denied the ability to shower since he has been detained at the City Justice Center ("CJC"), beginning October 5, 2020. (Memo at 1). Tillman alleges he detained in the second-floor infirmary, along with eight to ten other people and four people in isolation cells, in a COVID quarantine because no other areas of the jail have ramps or rails. (Complaint ("Compl."), ECF No. 1, ¶15; Tillman Declaration ("Tillman Dec."), ECF No. 4, ¶11). Tillman brings a one count Complaint under the ADA, 42 U.S.C. §12101, *et seq*. Tillman contends the shower facilities are "inaccessible to people with physical disabilities like Mr.

---

[1] Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2), but the Court addresses only the Motion for Temporary Restraining Order. The Court orders Plaintiff to file his Motion for Preliminary Injunction as a separate document because it seeks distinct relief.

1

Tillman, and the Defendants have refused to make reasonable accommodations that would allow him to shower." (Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Memo"), ECF No. 2-1, at 1). Defendants named in this action are the City of St. Louis; Adrian Barnes, the Superintendent of CJC; and Dale Glass, the Commissioner of the St. Louis Division of Corrections.

Tillman has been a paraplegic since a 2017 shooting. (Memo at 2; Tillman Dec., ¶3). Previously, in February 2020, Tillman was incarcerated at the CJC. (Memo at 2). During that stay, Tillman fell while trying to take a shower "in an inaccessible bathroom after jail staff denied his request for assistance." (Memo at 2). Specifically, Tillman states:

> During this time, in March 2020, I was provided a shower that was not accessible for someone with my disability. The shower had a ramp but it only had one bar in the front of the shower and a fold-down seat that was not strong enough to hold me. To use the shower I had to roll my wheelchair to the shower, attempt to sit up from the wheelchair holding the one bar, maneuver with one hand on the bar and the other hand pushing down the fold-down seat, and effectively allow my body to fall down into the seat.
>
> Prison officials did not assign staff to help me shower. I eventually fell in the shower and cut myself on my left buttocks.
>
> (Tillman Dec., ¶¶5,6).

Tillman suffered a laceration and then a blood infection. (Memo at 2, Tillman Dec, ¶6-7). Tillman "remains frightened that he may suffer another blood infection absent adequate hygiene protocols." (Memo at 2, Tillman Dec., ¶29).

Upon his October 2020 arrival at the CJC, Tillman alleges he told a nurse he required "either (1) a shower equipped for individuals who use wheelchairs or, alternatively, (2) staff assistance in showering." (Memo at 2, Tillman Dec., ¶17). Tillman alleges he never received a

2

shower or assistance with bathing, remained in his street clothes for 10 days after his initial request, and had his open wounds cleaned only one time per day (instead of twice). (Memo at 2, Tillman Dec., ¶¶18, 19, 41). On October 15, 2020, prison officials provided Tillman with a wash basin and a rag, but Tillman could not access lower parts of his body due to his paraplegia. (Memo at 3, Tillman Dec., ¶¶20-21).

Tillman alleges that, on various occasions, he complained verbally and in writing to medical and prison staff regarding his situation, but his complaints were either thwarted or ignored.

On March 8, 2021, correctional officer Price informed Tillman he would be moved to a "wheelchair accessible shower." (Memo at 5, Tillman Dec., ¶40). The "wheelchair accessible shower" was the same shower where he fell in early 2020. (Memo at 5, Tillman Dec. ¶40). Tillman said he would not use this "inaccessible shower." (Memo at 5, Tillman Dec., ¶40). Tillman claims he "repeatedly requested an accommodation that would allow him to use the shower," but "[n]o reasonable accommodation was provided." (Memo at 9). Tillman claims that Defendants' failure to accommodate Tillman "has already led to severe medical complications" and without injunctive relief, those consequences will only worsen." (Memo at 10).

### **Legal Standard**

In deciding a motion for temporary restraining order, the district court balances four factors: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest. *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981).

Failure to show irreparable harm is an independently sufficient ground upon which to deny injunctive relief. *Watkins Inc.*, 346 F.3d at 844 (citing *Adam–Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996); *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 420 (8th Cir.1987). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir.1999) (quoting *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)).

## Discussion

### 1. Likelihood of Success on the Merits

"Success on the merits has been referred to as the most important of the four [*Dataphase*] factors." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). Therefore, the Court addresses this factor first. *See id.* "[A]n injunction cannot issue if there is no chance of success on the merits." *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005). "But, [Tillman] does not need to 'prove a greater than fifty per cent likelihood that [he] will prevail on the merits.'" *Jet Midwest Int'l Co., Ltd*, 953 F.3d at 1044–45 (quoting *Dataphase Sys.*, 640 F.2d at 113). Instead, Tillman "must simply show a 'fair chance of prevailing.'" *Jet Midwest Int'l Co., Ltd*, 953 F.3d at 1044–45 (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)).

Refusal to accommodate is a violation of Title II of the Americans with Disabilities Act of 1990 (ADA). (Memo at 1). To prevail on his ADA claim, Tillman must establish that he was denied the benefits of the services, programs, or activities of a public entity. *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1065–66 (N.D. Ill. 2016); *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th

4

Cir. 1996); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). The ADA applies to "all services, programs, and activities provided or made available by public entities." 28 C.F.R. § 35.102(a); *see Jaros*, 684 F.3d at 672.

Tillman contends that Defendants denied him the benefits of services or programs because he was housed in rooms that did not comply with ADA structural requirements. Access to showers, meals, and toilet facilities is considered a "program or activity" within the meaning of the ADA. *Jaros*, 684 F.3d at 672 (court noting that inmate access to showers and meals is a program or activity); *Phipps v. Sheriff of Cook Cnty.*, 681 F.Supp.2d 899, 916 (N.D. Ill. 2009) (same). Public entities, such as correctional facilities, must "take reasonable measures to remove architectural and other barriers" that deny access to such services. *Tennessee v. Lane*, 541 U.S. 509, 531, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (citing 42 U.S.C. § 12131(2)); *see also* 28 C.F.R. § 35.149. The parties do not dispute that "provision of showers is a part of the programs, activities, or services referred to in the ADA[.]" *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 291 (3d Cir. 2019).

Defendants, however, contend that CJC has "an accessible shower and other appropriate equipment for paraplegic inmates to use in order to shower." (ECF No. 19 at 9) (citing Exhibit B (ADA approval of CJC) and Exhibit C (photos of shower and equipment)).[2] Defendants further argue that Tillman's disability does not require him to use the equipment he requests because he is capable of independent movement and care. (ECF No. 19 at 9). During the telephonic hearing, Defendants indicated that they had provided Tillman with the ability to give himself a sponge bath, and also gave him the option of returning to the handicapped-accessible shower in the medical

---

[2] As discussed, Tillman rejected Defendants' proposed shower.

5

unit. In addition, Defendants stated that Corizon Medical Services' employee, Dr. Brenda Mallard, determined that Tillman did not need additional accommodations beyond the offered handicapped-accessible shower.

In response, Tillman asserts that he is unable to reach all parts of his body with the sponge bath. Moreover, Tillman states that he previously fell in the shower in the medical unit because he was not provide assistance or a means to transfer himself from his wheelchair to the shower bench. Tillman further argues that Defendants have not demonstrated that the CJC medical unit shower is ADA compliant. Specifically, Defendants' Exhibit B includes a list of "immediate work items" that are "required to bring the Justice Center into compliance with current accessibility requirements," including "[s]hower floor and bench related work." (ECF No. 19-2, at 22-24). Finally, Tillman contends that Defendants' reliance on Dr. Mallard's opinion is misplaced, given that she has not provided a declaration in support of her position that Tillman does not require assistance.[3]

As previously discussed, Tillman must show only a fair chance of prevailing. Tillman presented evidence that he has been unable to properly bathe himself either with the sponge bath or unassisted in the handicapped-accessible shower. Tillman provided testimony that he cannot reach all of his body through a sponge bath. And, it is undisputed that Tillman previously fell when he utilized the handicapped-accessible shower unassisted. Defendants have presented some evidence that the handicapped-accessible shower complied with the ADA in 2009, but have not demonstrated that they have provided reasonable accommodation in either assisting Tillman with transfer into the shower or providing the means by which Tillman can transfer himself into the

---

[3] Conversely, Tillman has provided a declaration from an expert, who states that Tillman needs accommodations, including personal assistance.

6

shower. Thus, for purposes of Plaintiff's Motion for Temporary Restraining Order, the Court finds that that Tillman has presented a fair chance of prevailing in his claim that Defendants have not provided Tillman access to services, specifically showers, while housed in the CJC.

### 2. Threat of Irreparable Harm

The Court finds that Tillman has presented evidence of the threat of irreparable harm. Defendants claim that Tillman has been provided the opportunity to bathe either in a wash basin or in the handicapped-accessible shower. Those options, however, still present the threat of irreparable harm to Tillman. Tillman states he cannot clean his entire body with a sponge bath. As to the shower, Tillman cites to his previous injury while showering unattended in the CJC's handicapped shower. Tillman continued to suffer the effects of his fall, including a laceration on his buttocks. The evidence supports a finding that Tillman will be further injured if he is denied the opportunity to properly bathe his entire body or if he could suffer another fall without proper assistance and equipment.

### 3. Balance of Harms

The Court finds that the balance of harms weighs in favor of Tillman. Tillman contends that he remains unable to properly bathe and runs the risk of infection if he is not provided with assistance and the tools necessary to shower. Defendants claim that the relief requested by Tillman is "excessive" and would cause "significant disruption and expen[se][.]" (ECF No. 19 at 12). Defendants, however, have not detailed the cost of Tillman's requested relief and, during oral examination, Defendants indicated the jail was willing to provide assistance in showering to Tillman. Therefore, the Court finds that the potential for physical harm to Tillman outweighs the unquantified monetary harm that additional assistance to Tillman might create.

### 4. Public Interest

Tillman states that the relief requested satisfies the public interest, specifically as identified in the ADA. That is, ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. §12101(b)(1). In contrast, Defendants insist that CJC officials should be afforded deference regarding jail administration and that Tillman's request creates an "unnecessary burden and complications." (ECF No. 19 at 12). The Court holds that the public interest in effectuating the ADA's accessibility mandate outweighs the nebulous costs and hardships on jail administration. Therefore, the Court also finds this factor weighs in favor of providing relief to Tillman.

In conclusion, the Court finds the *Dataphase* factors weigh in favor of affording Tillman temporary injunctive relief. The Court will order Defendants to provide physical assistance and equipment to allow Tillman to shower in the handicapped-accessible shower in the CJC Medical Unit.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order (ECF No. 2) is **GRANTED**. Defendants are hereby **ORDERED** to:

(1) Move Tillman to the cell with a more accessible shower, located in the Medical Unit on the second floor of the CJC ("new cell"), absent emergency or exigent circumstances;
(2) Assign qualified staff to assist Tillman in transferring to and from the shower and with washing inaccessible areas of his body;

(3) Provide Tillman with necessary equipment to transfer to and from the shower, including but not limited to, a wheelchair transfer bench; and

(4) Within seven (7) days of the entry of this Order, provide Tillman's counsel and agents access to the new cell to allow an independent qualified professional to determine whether the shower is wheelchair accessible and what, if any additional support is needed for Tillman to access the shower. Within twenty-one (21) days of the independent qualified professional's inspection of the new cell, Tillman's counsel shall file a report by the independent qualified professional with this Court regarding the accessibility of the shower to Tillman.

**IT IS FURTHER ORDERED** that no bond shall be required from Plaintiff, given his indigent status.

**IT IS FINALLY ORDERED** that the Court will hold a zoom hearing on Plaintiff's Motion for Preliminary Injunction on **Tuesday, March 30, 2021** at **2:00 p.m.** The Court will send out an additional order detailing the pre-hearing filing requirements for the parties. The parties shall notify the Court immediately if they seek any changes to this hearing date.

Dated this 18th day of March, 2021.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**