## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY TILLMAN, | ) | |
| | ) | |
| Plaintiff, v. | ) | |
| | ) | Cause No. 4:21-cv-299 |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| ADRIAN BARNES, *in his individual* | ) | |
| *and official capacities,* | ) | |
| COMMISSIONER DALE GLASS, *in* | ) | |
| *his individual and official capacities*, | ) | |
| CORIZON, LLC, | ) | |
| BRENDA MALLARD, *in her individual* | ) | |
| *capacity*, | ) | |
| NURSE MORRIS (first name unknown), | ) | |
| *in her individual capacity*, and | ) | |
| KRISTINA DAVIS, *in her individual* | ) | |
| *capacity*, | ) | |
| | ) | |
| Defendants. | | |

## FIRST AMENDED COMPLAINT

Plaintiff Anthony Tillman brings this Complaint against the City of St. Louis, Adrian Barnes, and Commissioner Dale Glass under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq*. Mr. Tillman brings this Complaint against all named Defendants under 42 U.S.C. § 1983, *et seq.* He alleges as follows:

### INTRODUCTION

1.     Anthony Tillman is a forty-year-old man who was prevented from taking a shower during his entire six-month incarceration at the City of St. Louis City Justice Center ("CJC"). Mr. Tillman uses a wheelchair due to paraplegia. He requires access to a shower large enough to use with his wheelchair, equipment to facilitate his safe entry and exit from his chair and the shower, and physical assistance with washing parts of his body he cannot reach due to his disability. Despite being aware of Mr. Tillman's disability, the City of St. Louis (the "City"), Commissioner Dale

1

Glass, and Adrian Barnes (the "City Defendants") refused to accommodate him from the beginning of his detention at the CJC on October 5, 2020 until after this Court entered a Temporary Restraining Order mandating that the City Defendants provide Mr. Tillman an accessible shower in March 2021. The City Defendants' refusal to accommodate Mr. Tillman's disability by providing an accessible shower violated Title II of the Americans with Disabilities Act of 1990.

2.      Because of being unable to shower, Mr. Tillman developed a series of serious, dangerous, and painful medical conditions. All named Defendants then demonstrated deliberate indifference to these medical needs, which had been created in the first place by discrimination on the part of the City Defendants.

3.      In March 2021, this Court entered a Temporary Restraining Order (TRO) requiring the City Defendants to provide Mr. Tillman with a shower at least every other day. *See* ECF No. 30 at 8-9. The City Defendants also stipulated to their obligation to provide Mr. Tillman with an accessible shower every other day. ECF No. 50. But Defendants did not meet the obligation imposed by this Court or the one they took on themselves. Mr. Tillman went multiple days without a shower on multiple occasions after the TRO and Stipulations. The City Defendants delegated responsibility for assisting Mr. Tillman in the shower to Corizon personnel. *See* ECF No. 30 at 4. In any case, Mr. Tillman did not get the showers to which this Court determined he was legally entitled and subsequently suffered the severe yet predictable consequences.

## PARTIES

4.      Plaintiff Anthony Tillman is a citizen of the United States and a resident of the State of Missouri. At the time he commenced this lawsuit, Mr. Tillman was detained at the CJC. He was subsequently released, and as of the time of the filing of this First Amended Complaint is no longer incarcerated.

5.      Defendant City of St. Louis, Missouri, is a political and geographic subdivision of

the State of Missouri and is organized as a constitutional charter city under Article VI, section 19 of the Missouri Constitution. The City is the public entity responsible for oversight of the City Justice Center through the Division of Corrections within the Department of Public Safety.

6.      Defendant Adrian Barnes is the Superintendent of the City Justice Center and is being sued in his individual and official capacities. Defendant Barnes enforces the detention of individuals housed at the City Justice Center. At all times relevant to the subject matter of this litigation, Defendant Barnes was responsible for training and supervising all Correctional Officers at the City Justice Center, for setting jail policy, and for ensuring the health and welfare of all persons detained at the City Justice Center.

7.      Defendant Dale Glass is the Commissioner of the St. Louis Division of Corrections and is being sued in his individual and official capacities. Defendant Glass directs the Division of Corrections and enforces the detention of individuals housed at City Justice Center. At all times relevant to the subject matter of this litigation, Defendant Glass was responsible for training and supervising all other Defendants and other employees of the City of St. Louis staffing the City Justice Center, for setting jail policy, and for ensuring the health and welfare of all persons detained at City Justice Center.

8.      Defendant Corizon, LLC is the contracted healthcare provider for St. Louis Division of Corrections facilities. Corizon, LLC is a Missouri limited liability company with its principal place of business located in Brentwood, Tennessee.

9.      Defendant Brenda Mallard, upon information and belief, is the medical doctor charged with providing healthcare to people detained by the City according to Corizon's contract with the City. At all times relevant to this litigation, Defendant Mallard was responsible for directing Mr. Tillman's medical care and treatment and the supervision of the Corizon employees who provided direct care to Mr. Tillman. Defendant Mallard saw Mr. Tillman in a medical capacity

3

on multiple occasions.  Defendant Mallard is being sued in her personal capacity.

10.     Defendant Kristina Davis, upon information and belief, is an administrative employee of Corizon. Upon information and belief, Defendant Davis is responsible for supervision of Corizon's employees working in City facilities and the provision of care to people detained by the City. Defendant Davis is being sued in her individual capacity.

11.     Defendant Morris, upon information and belief, is a nurse employed by Corizon and tasked with providing medical care to people incarcerated at CJC. She provides direct patient care and is therefore the immediate cause of any injuries suffered by Mr. Tillman while he was under her care. Defendant Morris is being sued in her individual capacity.

### JURISDICTION AND VENUE

12.     This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 12188(a), 42 U.S.C. § 1983, and the Fourteenth Amendments to the U.S. Constitution.

13.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1367. Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. §12205.

14.     Venue is proper under 28 U.S.C. § 1391(b) because all the events alleged herein occurred within the State of Missouri and all the parties were residents of the State at the time of the events giving rise to this litigation.

15.     Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

### SUMMARY OF RELEVANT FACTS

16.     Anthony Tillman uses a wheelchair as the result of a 2017 shooting that caused paraplegia. He still has a bullet lodged in his back from the 2017 shooting.

17.     In February 2020, Mr. Tillman was incarcerated on an unrelated matter at CJC.

4

18.     During the CJC detention beginning in February 2020, Mr. Tillman was provided access to a shower that was not equipped for people in wheelchairs. Jail officials did not  assign staff to help him in the shower. No Corizon staff assisted Mr. Tillman in the shower. The shower had a ramp, but it only had one bar in the front of the shower and a fold-down seat that was not strong enough to hold Mr. Tillman's body. To use the shower, Mr. Tillman had to roll his wheelchair to the shower, attempt to sit up from his wheelchair holding the one bar, maneuver with one hand on the bar and the other hand pushing down the fold-down seat, and effectively allow his body to fall onto the seat.

19.     Mr. Tillman fell in the shower in March 2020, during his earlier incarceration, cutting his left buttock. After this fall, he developed a blood infection, also known as sepsis. He became delirious from the infection and was eventually hospitalized.

20.     Due to the blood infection he sustained, Mr. Tillman continues to suffer from medical conditions including persistent, open wounds on his body and complications resulting in extremely dry skin and toenails that frequently fall off, all of which render him susceptible to infection.

21.     Mr. Tillman was most recently incarcerated at St. Louis's City Justice Center from October 5, 2020 until on or about April 8, 2021. He was confined to the second-floor infirmary— alongside approximately eight to ten people in COVID quarantine, and an additional three to four people in isolation cells—during the entirety of his stay because there are no rails or ramps throughout the rest of the jail.

22.     Mr. Tillman never received inmate orientation while incarcerated at CJC. Mr. Tillman never received a copy of CJC's inmate handbook. He was unable to access the handbook on the tablets provided to inmates because he did not know that it was available in that medium and his

access to any tablet was extremely limited.

23.     Prior to his detention at CJC, Mr. Tillman went to Paraquad, a service provider for individuals with disabilities, every day for physical therapy. Mr. Tillman's doctors have told him that he is only temporarily paralyzed and that physical therapy could help him build strength to walk again. Despite this need for timely physical therapy, he did not receive any physical therapy while incarcerated at CJC, and his legs atrophied.

24.     Mr. Tillman repeatedly and regularly asked both City and Corizon employees about his (non-existent) access to physical therapy. Many responses focused on the fact that the "therapy room" was now in use as a storage room and the room hadn't actually been used for therapy in years. When Mr. Tillman asked Defendant Mallard specifically about getting the physical therapy he would need to preserve his chance at walking again one day, Defendant Mallard told him "I don't think that's gonna happen."

25.     When he arrived at CJC in October 2020, Mr. Tillman spoke with a nurse employed by Corizon, whose name he cannot recall, and informed her that, due to his disability, he would require a shower equipped for individuals who use wheelchairs and staff assistance in showering.

26.     In response, the nurse informed Mr. Tillman that there were no shower facilities equipped for people who use wheelchairs. Rather, CJC shower facilities require detainees to take a step in order to get into the shower and are equipped with neither bars nor rails. Further, CJC provides no staff assistance with showering to detainees who are disabled.

27.     On or around October 12, 2020, after approximately a week of not bathing, prison officials provided Mr. Tillman with a basin and a rag with which to wash himself. When the rag and bucket were available, he attempted to clean the parts of his body he could reach using room-temperature water from the sink in his cell.

28.     Upon information and belief, there was no valid medical reason for Mr. Tillman to

be forced to bathe himself with a rag and bucket.

29.     Mr. Tillman is unable to reach parts of his body with his hands due to his disability. He received no assistance in washing himself, so he had been unable to wash those parts of his body at all since arriving at CJC.

30.     Furthermore, even if he had been physically able to reach every part of his body with the room-temperature rag, Mr. Tillman would have suffered the hygienic consequences of washing himself without soap or running water.

31.     Mr. Tillman first informed Defendant Mallard that he needed help getting into and out of the shower and washing parts of his body the first time he saw her, in October 2020. He repeated this request to Defendant Mallard on multiple occasions, and her response was to tell Mr. Tillman that she did not think that assistance was forthcoming and she was not going to argue with him about it.

32.     Mr. Tillman was not provided an accessible shower in October, November, or December 2020.

33.     On or around January 1, 2021, Mr. Tillman saw Defendant Mallard because he was urinating blood, for which the doctor prescribed antibiotics. During that conversation, Mr. Tillman told Defendant Mallard that he had not had a shower since arriving at CJC. He showed the doctor his open wounds and dying toenails. Defendant Mallard told Mr. Tillman that CJC was "working on" getting a Hoyer Lift, an assistive device that allows individuals to be transferred between a bed and a chair or other similar resting places by use of electrical or hydraulic power, but she provided no immediate solutions and again refused to "argue with" him.

34.     Upon information and belief, during some or all of Mr. Tillman's incarceration, the City Defendants and the Corizon Defendants had access to a Hoyer Lift that was already in CJC.

7

However, upon information and belief, Defendants chose not to set up this device despite the possibility that it could accommodate Mr. Tillman's disability, of which they were aware.

35.     Mr. Tillman explained to Defendant Mallard that the lack of bathing was causing medical problems for him. Mr. Tillman showed Defendant Mallard the open sores and damaged feet his lack of bathing was causing. Defendant Mallard told him that the room-temperature basin and washcloth he had been provided was sufficient for him to clean himself.

36.     Defendant Mallard ordered that Mr. Tillman be provided with a foot soak, but he never received one.

37.     When Mr. Tillman told Defendant Mallard that he could not reach part of his body and that therefore they either ran the risk of infection or were infected already, Defendant Mallard told him to just "do what you can" about washing himself.

38.     On or around January 2, 2021, Mr. Tillman asked Nurse Morris (first name unknown) if CJC or Corizon could provide an individual to assist him with bathing. Nurse Morris denied his request, telling him: "This is not a long-term care facility! Talk to your attorney."

39.     On February 12, 2021, Mr. Tillman spoke by phone with his public defender, Chelsea Harris, and his case manager and social worker from CJC, Ms. Lee (first name unknown). He told them that he had been unable to shower since arriving at CJC on October 5, 2021 due to the lack of shower facilities equipped for individuals who use a wheelchair and refusal of prison and Corizon officials to provide staff to assist him.

40.      Ms. Lee informed Mr. Tillman that she would speak with the nurses but that he would need to get an order from a judge in order to receive accommodations in the form of sufficient facilities or staff assistance. This prediction proved prescient.

41.     Mr. Tillman's medical conditions, including persistent dry skin, toenails constantly falling off, and history of open sores and wounds, leave his body with many opportune spots for

infection.

42.     Because Mr. Tillman is paraplegic and had been given only a washbasin and rag with which to bathe himself, he was unable to reach many spots of his body.  Thus, he could not ensure his exposed skin and nails remained clean, placing him at grave risk of infection.

43.     Because of these conditions, Mr. Tillman filed an Inmate Resolution Request ("IRR") in late December 2020 on a tablet, complaining of being unable to access a wheelchair-accessible shower or have staff assist with his bathing.

44.     After not receiving a response to his grievance, Mr. Tillman asked his CJC caseworker, Mr. Weber (first name unknown), about following up or appealing, Mr. Weber replied, "They'll be getting back to you."

45.     In mid-January 2021, Mr. Tillman filed a paper grievance because Nurse Morris was leaving his medication outside his "chuckhole", where he could not access it, and because she was not changing his catheter. He filed this grievance on paper because the tablets were not working at the time.

46.     Mr. Tillman uses catheters designed for one-time use. They must be disposed of after use to prevent infection. Even when staff was cooperative with his need for catheters, they only allowed him one per eight-hour work shift. He was therefore forced to reuse catheters and risk infection or only urinate one time every eight hours.

47.     Nurse Morris's indifference to Mr. Tillman's medical need for clean catheters was even more deliberate than others'. She outright refused to give him new catheters. When Nurse Morris was the only medical staff to work over the weekend, Mr. Tillman went without sanitary catheters for upwards of 48 hours.

48.     Mr. Tillman was not provided an accessible shower in January or February 2021.

49.     On March 3, 2021, after being incarcerated for nearly five months without an

accessible shower, Mr. Tillman again asked his case manager, Ms. Lee, for a grievance form. Although he had not received a response to his December IRR about the shower, he hoped that filing another, emergency grievance might prompt jail or Corizon staff to remedy the issue and provide him access to a shower and a remedy for his ongoing medical conditions.

50.     Ms. Lee said she would get him a grievance form that same day, but she never returned with one.

51.     On March 3, 2021, Mr. Tillman drafted his own grievance on a piece of paper and tried to give his grievance form to a Correctional Officer ("CO") to place in the grievance box, but the CO refused to put the form in the box.

52.     On March 4, 2021, Mr. Tillman again asked a CO to accept his Emergency Grievance, but the CO refused to take it from him or place it in the grievance box.

53.     On March 5, 2021, Mr. Tillman gave the same copy of his March 3 Emergency Grievance to CO Robinson.

54.     On March 5, 2021, Mr. Tillman authorized his public defender to send a letter to Commissioner Glass given the lack of response to prior complaints and the initial refusal to accept the emergency grievance. Commissioner Glass never responded, despite the email requesting a response by close of business on March 8, 2021.

55.     As of April 8, 2021, when he was released, all of Mr. Tillman's grievance forms had gone unanswered.

56.     On March 8, 2021, CO Price visited Mr. Tillman's cell and told him that they were trying to move him to a "wheelchair accessible shower." Mr. Tillman inquired about what made the shower wheelchair accessible, and CO Price explained that it was the same inaccessible shower in which he fell and hurt himself during his prior incarceration at CJC in early 2020, which led to a blood infection. Mr. Tillman informed CO Price that he needed a shower that could accommodate

10

his wheelchair and allow him to safely transfer himself from his wheelchair. CO Price responded by telling him "We don't have that." Because the shower was not accessible, and Mr. Tillman was afraid of falling again and hurting himself, he asked if she or the CJC could accommodate him with an accessible shower. She said they could not, so Mr. Tillman told her that he did not want to use the inaccessible and unsafe shower.

57.     On March 18, 2021, after briefing by the parties and a hearing, this Court granted Mr. Tillman's Motion for Temporary Restraining Order. ECF No. 30.

58.     This Court ordered the City Defendants to 1) move Mr. Tillman to a cell in the medical unit, close by the shower that was "more accessible;" 2) assign staff to assist Mr. Tillman in transferring to and from the shower and washing parts of his body he could not reach; 3) provide Mr. Tillman with all equipment necessary to transfer to and from the shower; and 4) allow inspection of the proposed shower for Mr. Tillman by his medical or occupational expert. *Id.* at 8-9.

59.     The City further agreed, via stipulation, to provide Mr. Tillman with a shower at least every other day. *See* ECF No. 46; ECF No. 46-1.

60.     Relying on this agreement from the City, Mr. Tillman voluntarily withdrew his Motion for Preliminary Injunction on March 26, 2021. *See* ECF No. 47.

61.     Contrary to this Court's Order and his agreement with the City Defendants, Mr. Tillman did not get a shower every other day. Upon information and belief, Corizon staff immediately refused to provide Mr. Tillman with the equipment and assistance he needed. No City employee stepped in to fulfill the City's obligation to provide Mr. Tillman with safe showers. Upon information and belief, the City did not attempt to find another provider or contractor to fulfill the obligations it had delegated to Corizon, even after Corizon, through its employees, explicitly refused to follow this Court's order or the parties' subsequent agreement.

62.     Specifically, on the weekend of Saturday, March 27 and Sunday, March 28, Mr. Tillman requested a shower when one was due (according to the Court order and stipulation). However, staff explained to him that only male nurses would be allowed to assist him with showering and, since no male nurses worked for Corizon on the weekends, no one would assist him on Saturday or Sunday. This meant that Mr. Tillman went two straight days without a shower.

63.     Upon information and belief, Corizon personnel, including Defendants Mallard and Davis, were aware of the order from this Court requiring that Mr. Tillman receive assistance with showering at least every other day, and were aware of Mr. Tillman's need for regular bathing and the serious medical conditions its lack caused.

64.     In addition, upon information and belief, Defendant Glass spoke to Corizon on more than one occasion regarding its staff's obligation to meet Mr. Tillman's medical needs by assisting with a shower at least every other day after Corizon staff's initial failure to comply with the court order. Upon information and belief, Corizon agreed that Mr. Tillman would receive assistance with showering every other day.

65.     Despite this further agreement, Corizon staff, including Defendants Mallard and Davis, continued to refuse to provide Mr. Tillman with a shower on the agreed-upon schedule.

66.     Specifically, Corizon staff, including Defendants Mallard and Davis, refused to provide Mr. Tillman with assistance in the shower when there was no male nurse on duty to assist him.

67.     The weekend of Saturday, April 3 and Sunday, April 4, no male nurse was on duty for Corizon.

68.     Mr. Tillman received a shower on Friday, April 2. But, once again, his needs were ignored over the weekend. In fact, Mr. Tillman did not receive a shower until Tuesday, April 6. Despite this Court ordering and the Defendant City agreeing that Mr. Tillman would shower every

other day, he went without on three consecutive days.

69.     Upon information and belief, Corizon never made any attempt to adjust its personnel schedule or to otherwise adjust its policies or practices to ensure that Mr. Tillman received a shower in accordance with the Court's order and multiple agreements.

70.     Upon information and belief, no one from the City took any further action to enable Mr. Tillman to safely shower, even after the City became aware that Corizon was refusing and thereby failing to meet that obligation.

## CLAIMS FOR RELIEF

**Count I—Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq*.**
Failure to Provide Showers Accessible to People with Disabilities
(Against Defendant City, Superintendent Barnes, and
Commissioner Glass)

71.     Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

72.     Defendant City of St. Louis, Defendant Barnes, and Defendant Glass violated Title II of the ADA by failing to provide Mr. Tillman with a shower that was accessible to him as a wheelchair user or the assistance he needed to be able to adequately maintain hygiene.

73.     Title II of the ADA states: "no qualified individual shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

74.     State jails and prisons, including the City Justice Center, are within the statutory definition of a "public entity." *See Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)); *see also Kutrip* v*. City of St. Louis*, 329 F. App'x 683, 684-85 (8th Cir. 2009) (applying ADA to St. Louis City jail).

75.     To state a claim under the ADA, a plaintiff must show "(1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he

was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999).

76.     Mr. Tillman is a person with a disability under the ADA, as the statute "clearly covers typical disabilities such as . . . paraplegia." *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 499 (8th Cir. 2002).

77.     Mr. Tillman is "otherwise qualified for the benefit in question," namely access to showers, which are a "service, program or activity" as defined by the ADA. *See United States v. Georgia*, 546 U.S. 151, 157, (2006).

78.     Mr. Tillman has been excluded from the showers based upon his disability because the showers at CJC are not accessible to him as a paraplegic wheelchair user. Upon information and belief, all but one of the showers at the CJC have steps to get into them, have no bars or rails, and lack an appropriate shower bench to which a person could safely transfer from a wheelchair. The one shower with a ramp is too small to accommodate Mr. Tillman and his wheelchair, and it is unsafe because it lacks sufficient bars and rails and lacks an appropriate shower bench to which a person could safely transfer from a wheelchair.

79.     Furthermore, Mr. Tillman has been denied a reasonable accommodation to shower because Defendants refused to provide him with a staff person to assist with his bathing.

80.     Defendant City of St. Louis, Defendant Barnes, and Defendant Glass acted with deliberate indifference to Mr. Tillman's rights under the ADA because they had actual knowledge of his disability, knew that he was being denied access to a shower based on his disability, knew that there was an available accommodation that would allow him to shower, and nonetheless denied him that accommodation—and thereby the ability to access basic hygiene—for over five months.

WHEREFORE, Plaintiff Anthony Tillman prays that this Court enter an Order in his favor and respectfully asks that this Court:

    a.   Enjoin the Defendants continued discrimination and, specifically order the Defendants to:

        i.   file with the Court, within 5 days of the entry of the Court's injunctive order, a detailed plan to establish a wheelchair-accessible shower at the City Justice Center ("CJC");

        ii.   build out a wheelchair-accessible shower within 21 days of the filing of the detailed plan;

    b.   Award monetary damages as compensation for the harm suffered by Mr. Tillman including but not limited to:

        i.   All economic losses on all claims as allowed by law.

        ii.   Compensatory and consequential damages, including damages for emotional distress, embarrassment, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

        iii.   Attorneys' fees and costs associated with this action, including expert witness fees, on all claims allowed by law; and

    c.   Enter all appropriate relief at law and equity that this Court deems just and proper.

**Count II—Fourteenth Amendment**
Deliberate Indifference to Medical Needs
(Against all Defendants)

81.    Plaintiff incorporates all preceding paragraphs as if fully set forth in this Count.

82.    The acts and omissions of the Defendants in failing to provide adequate medical care to Mr. Tillman despite his clear need for treatment of his sores, cracked skin, detaching nails, and urological issues constitute deliberate indifference to Mr. Tillman's serious medical needs. They

thereby violate the Fourteenth Amendment to the U.S. Constitution.

83.      As a pretrial detainee, Mr. Tillman had a clearly established right under the United States Constitution to be free from this deliberate indifference to his serious medical needs. *Barton v. Taber,* 820 F.3d 958, 966 (8th Cir. 2016).

84.      Deliberate indifference is found when a detainee has an objectively serious medical need and correctional staff have actual knowledge of, but deliberately disregard, such need. *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009); *Farmer v. Brennan,* 511 U.S. 825, 847 (1994).

85.      At all relevant times, Mr. Tillman had a serious medical need to properly bathe himself and prevent further skin infection, specifically for a shower accessible to an inmate with paraplegia using a wheelchair and for assistance accessing said shower.

86.      Mr. Tillman further had a serious medical need for sanitary catheters.

87.      At all relevant times, Defendants were aware of Mr. Tillman's serious need for medical care.

88.      At all relevant times, Defendants acted with deliberate indifference, failed to provide the necessary medical care, or failed to direct that the medical care be provided. By failing to provide Mr. Tillman with adequate medical care, the Corizon Defendants knew of and disregarded a substantial risk of serious harm to Mr. Tillman's physical health.

89.      In the alternative, the Corizon Defendants made an intentional decision with regard to Mr. Tillman's medical health care that put Mr. Tillman at a substantial risk of suffering serious harm. The Corizon Defendants did not take reasonable available measures to abate that risk, even though a reasonable medical professional in the circumstances would have appreciated the high degree of risk involved—making the consequences of Corizon Defendants' conduct obvious.[1]

---

[1] This portion of the claim is pled on the basis of "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b)(2).

90.    The Defendants' above-described actions and omissions directly and proximately caused Mr. Tillman's injuries and damages.

WHEREFORE Plaintiff Anthony Tillman prays this Court:

a.    Award him compensatory damages;

b.    Award his costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and other relevant provisions of law; and

c.    Enter all appropriate relief at law and equity that this Court deems just and proper.

Dated:  May 24, 2021                    Respectfully submitted,

ARCHCITY DEFENDERS, INC.

*/s/Emanuel Powell*
Blake A. Strode (MBE #68422MO)
Jacki Langum (MBE #58881MO)
John M. Waldron (MBE #70401MO)
Maureen Hanlon (MBE #70990MO)
Emanuel Powell (E.D. Mo. Bar No. #706171MA)
Nathaniel R. Carroll (MBE #67988MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102 855-724-2489
314-925-1307 (fax)
bstrode@archcitydefenders.org
jlangum@archcitydefenders.org
jwaldron@archcitydefenders.org
mhanlon@archcitydefenders.org
epowell@archcitydefenders.org
ncarroll@archcitydefenders.org

RODERICK & SOLANGE MACARTHUR
JUSTICE CENTER

*/s/ W. Patrick Mobley*
Amy E. Breihan (MBE #65499MO)
William Patrick Mobley (MBE #63636MO)
3115 S. Grand Blvd., Suite 300
Saint Louis, MO 63118
(314) 254-8540
(314) 254-8547 (fax)
amy.breihan@macarthurjustice.org

17

pat.mobley@macarthurjustice.org

SAINT LOUIS UNIVERSITY SCHOOL OF LAW
LEGAL CLINICS

*/s/Brendan Roediger*
Brendan Roediger (E.D. Mo. Bar No. #6287213IL)
Lauren Bartlett (MBE #71698MO)
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
314-977-2778
brendan.roediger@slu.edu
lauren.bartlett@slu.edu

*Attorneys for the Plaintiff*

RIGHTS BEHIND BARS

*/s/Oren Nimni*
Oren Nimni *admitted pro hac vice*
416 Florida Avenue, NW #26152
Washington, D.C. 20001
(206) 200-9088
oren@rightsbehindbars.org

*Attorneys for the Plaintiff*